UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RIGOBERTO MENDOZA-LOPEZ, individually and d/b/a Sophia's Restaurant, <br><br> Defendant. | Case No: 4:17-CV-05333-SBA <br><br> **ORDER GRANTING IN PART PLAINTIFF'S UNOPPOSED MOTION FOR DEFAULT JUDGMENT** <br><br> Dkt. 15 |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") brings the instant cable and/or satellite piracy action against Defendant Rigoberto Mendoza-Lopez, individually and d/b/a Sofia's Restaurant ("Defendant"). Defendant did not appear, resulting in the entry of default. The matter is presently before the Court on Plaintiff's unopposed motion for default judgment, wherein Plaintiff requests $28,800 in damages. Dkt. 15. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion in part and awards damages as set forth below.[1]

## I. BACKGROUND

Pursuant to a license agreement, Plaintiff obtained the exclusive commercial distribution rights to *Saul Alvarez v. Liam Smith WBO World Super Welterweight Championship Fight Program*, including undercard bouts and commentary ("Program"), which telecast Saturday, September 17, 2016. Compl. ¶ 14, Dkt. 1; Gagliardi Aff. ¶¶ 3-4 & Ex. 1, Dkt. 15-4. In turn, Plaintiff executed sublicensing agreements that granted various commercial establishments the right to publicly exhibit the Program for a fee. Compl. ¶ 15; Gagliardi Aff. ¶ 8 & Ex. 2.

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

Defendant is the owner and/or operator of Sofia's Restaurant ("Sophia's") in Hayward, California. Compl. ¶ 7. Without a lawful sublicense, Defendant intercepted and broadcast the Program at Sophia's. Id. ¶ 11; Gagliardi Aff. ¶ 7. On the eve of September 17, 2016, Plaintiff's investigator, Sam Karimzadeh ("Karimzadeh"), visited Sophia's from approximately 7:30 to 8:45 p.m. Karimzadeh Aff., Dkt. 15-3 at 2-3. Karimzadeh observed the Program being broadcast on a single television. Id. He performed three headcounts and counted between 30 and 50 patrons. Id. at 3. In his estimation, "maybe eight people seemed to care at all about the fight judging by how they carried on while seated, or if they were even looking in the direction of the television." Id.

On September 14, 2017, Plaintiff filed a Complaint against Defendant, alleging causes of action for: (1) violation of 47 U.S.C. § 605 ("section 605"); (2) violation of 47 U.S.C. § 553 ("section 553"); (3) conversion; and (4) violation of California Business and Professions Code § 17200, et seq. Dkt. 1. Defendant failed to appear or respond to the Complaint, and the Clerk entered default on January 10, 2018. Dkt. 14. Thereafter, Plaintiff filed the instant motion for default judgment, seeking statutory and enhanced damages under section 553 in the amount of $5,400 and $21,600, respectively; conversion damages in the amount of $1,800; and attorneys' fees and costs. Mot., Dkt. 15; Mem. of P. & A. ISO Mot. ("Mem."), Dkt. 15-1.

## II.     **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk is required to enter default when established by affidavit or otherwise. Upon the entry of default, well-pleaded factual allegations are taken as true and sufficient to establish liability. See Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied."); see also TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)). The Plaintiff must provide proof regarding damages, however. See Fed. R. Civ. P. 8(b)(6); see also Geddes, 559 F.2d at 560.

Once default is entered, a plaintiff may request a default judgment. See Fed. R. Civ. P. 55(b); Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986) ("A failure to make a timely answer to a properly served complaint will justify entry of a default judgment."), amended on other grounds, 807 F.2d 1514 (9th Cir. 1987). The decision whether to grant or deny a request for default judgment lies within the sound discretion of the court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that the court considers in exercising its discretion include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1472-73 (9th Cir. 1986).

## III. DISCUSSION

### A. PLAINTIFF'S CLAIMS AND DAMAGES

#### 1. Sections 605 and 553

Plaintiff brings claims under sections 605 and 553, but moves for default judgment and damages solely under section 553. Although the Ninth Circuit has not delineated the precise reach of each statute, section 605 speaks to the unauthorized interception of satellite signals, whereas section 553 speaks to the unauthorized interception of cable signals. See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d F.3d 347, 349 n.1 (9th Cir. 1999); J&J Sports Productions v. Coyne, 857 F. Supp. 2d 909, 914 (N.D. Cal. 2012). Plaintiff acknowledges that it may recover under only one statute, Mem. at 8 n.1, and that the method of Defendant's interception is unspecified, id. at 9. As this Court has held, when the method of interception is not proven, damages should be awarded under section 553. See J&J Sports Prods., Inc. v. McCalpin, No. 16-02285 SBA, Dkt. 20 at 4 (N.D. Cal. Aug. 31, 2016). Plaintiff's election to proceed under section 553 is therefore proper.[2]

---

[2] Because Plaintiff elects to proceed solely under section 553, the Court deems it to have abandoned its claim under section 605 and dismisses the same with prejudice.

Section 553 provides, in pertinent part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). The Court takes as true the allegation that Defendant intercepted and broadcast the Program without authorization. Compl. ¶¶ 11, 17. Additionally, Plaintiff has provided evidence that Defendant broadcast the Program without a lawful sublicense. See Karimzadeh Aff. at 2-3 (describing exhibition of the Program at Sophia's); Gagliardi Aff. ¶ 7 ("At no time did Defendant or Sophia's Restaurant lawfully license the Program from J & J Sports Productions, Inc."). Plaintiff has therefore established a claim for unlawful interception under section 553.

Regarding damages, Plaintiff may recover "a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). If the violation was "committed willfully and for purposes of commercial advantage or private financial gain," the Court, in its discretion, may enhance the award of damages "by an amount of not more than $50,000." Id. § 553(c)(3)(B). Alternatively, if "the violator was not aware and had no reason to believe that his acts constituted a violation of [section 553]," the Court, in its discretion, may reduce the award of damages "to a sum of not less than $100." Id. § 553(c)(3)(C). Factors a court may consider in determining damages include, but are not limited to: advertisements, imposition of a cover charge, increased food and beverage prices, the number of patrons present, the number of televisions in use, the loss incurred by the plaintiff, and any prior violations by the offender. Coyne, 857 F. Supp. 2d at 917.

Here, Plaintiff has shown that it would have charged Defendant a sublicense fee of $1,800 to exhibit the Program. See Karimzadeh Aff. at 2-3 (establishing an approximate capacity of less than 100 persons); Gagliardi Aff. ¶ 8 & Ex. 2 (requiring a sublicense fee of $1,800 for commercial establishments with a capacity of 1 to 100 persons). The evidence presented offers no insight as to the amount of profit, if any, that Defendant derived from exhibiting the Program. Although there were 30 to 50 patrons present, Defendant showed the Program on only one television, and Plaintiff's investigator surmised that "maybe eight

people seemed to care at all about the fight." Karimzadeh Aff. at 3. Plaintiff has not provided any evidence regarding the number of persons who typically patronize Defendant on a Saturday evening. There is no evidence that Defendant charged a cover fee or premiums on food and drink. Nor is there any evidence that Defendant advertised the Program as a way to attract customers. In view of the foregoing, and in the absence of any evidence that Defendant is a repeat offender, the Court finds that an award of statutory damages in the amount of $500 is appropriate. See McCalpin, No. 16-02285 SBA (awarding $2,000 in statutory damages under similar circumstances, but where the program was exhibited on three televisions, between 102 and 111 patrons were present, and the sublicense fee was $9,000).[3] The Court further finds that enhanced statutory damages are unwarranted. Id. (declining to award enhanced statutory damages).

Plaintiff urges the Court to award enhanced statutory damages based on its allegation that Defendant intercepted the Program willfully and for the purpose of commercial advantage or private financial gain. Plaintiff's arguments in support of enhanced damages are unpersuasive. Plaintiff asserts that Defendant, by his default, admitted the necessary elements for enhanced damages. Plaintiff further asserts that it is simply not possible to "mistakenly, innocently or accidentally" intercept its broadcasts, and that pirates intercept its programs for no other reason but commercial advantage or private financial gain. Gagliardi Aff. ¶¶ 9, 14-17. Because allegations of willfulness and financial gain "bear directly on the question of damages," however, "the mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000) (citing Geddes, 559 F.2d at 560). Conclusory assertions that Defendant must have acted willfully and for financial gain fair no better. The Court is neither required to find willfulness in every

---

[3] Plaintiff brings the Court's attention to a second action pending against Defendant. J & J Sports Prods., Inc. v. Mendoza-Lopez, No. 17-06421 YGR. The violation at issue in that action occurred several weeks after the violation at issue here, however, and both violations occurred well before either suit was filed. The Court therefore cannot find that the other violation constitutes a "prior violation," nor find that Defendant had notice of the unlawfulness of his conduct.

violation, nor required to award enhanced damages for every act of willful interception. See 47 U.S.C. § 553(c)(3)(B) ("the court *in its discretion may* increase the award of damages") (emphasis added). The Court finds no cause to award enhanced damages here.

Next, Plaintiff misconstrues this Court's prior decision in McCalpin as requiring a showing of "actual profit" for an award of enhanced damages. Mem. at 11. Plaintiff argues that the view expressed in McCalpin is erroneous because all the statute requires is "an *attempt* to profit," not *actual* profit. Memo. at 11. Plaintiff rightly states that actual profits are not required, see 47 U.S.C. § 553(c)(3)(B) (allowing for enhanced damages when a violation is "committed willfully and *for purposes of* commercial advantage or private financial gain") (emphasis added), but misunderstands the reasoning applied in McCalpin and the instant case. In McCalpin, as in this case, Plaintiff offered only conclusory statements in support of its allegation that the defendant had acted willfully and for personal financial gain. In the absence of any evidence to support such a finding, or any showing of incremental profits (i.e., profits based on increased patronage or prices due to exhibition of the Program), the Court declines to award enhanced damages.[4]

Finally, Plaintiff argues that "the broadcast of pirated material acts as a draw for customers, such that willfulness and the purpose of commercial advantage [are] established." Mem. at 12 (citing Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004) (holding that, for purposes of vicarious copyright infringement, a service provider derives financial benefit from a third party's infringing conduct if the availability of infringing material "acts as a 'draw' for customers")). The authority relied upon by Plaintiff is inapposite. In Ellison, the relevant inquiry was not whether the defendant acted willfully and for the purpose of commercial advantage or private financial gain, but rather, whether it derived a financial benefit. Moreover, this argument represents yet one more variation on Plaintiff's ineffective theme—i.e., that the prerequisites to enhanced damages are

---

[4] Plaintiff's assertion that "a pirate can willfully pirate a program and avoid enhanced statutory damages simply by being a bad businessperson," Mem. at 11-12, is without basis. The Court in no way suggests that the failure to earn a profit will override *evidence* demonstrating that a defendant acted willfully and for financial gain.

established simply by virtue of Defendant's unlawful interception. For all the reasons set forth above, the Court disagrees.

Accordingly, the record before the Court supports the entry of default judgment against Defendant for violation of 47 U.S.C. § 553 and an award of statutory damages in the amount of $500.[5]

### 2. Conversion

"The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages . . . ." Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015) (citation omitted). The right to distribute a television program constitutes a right to possession of property for purposes of such a claim. Coyne, 857 F. Supp. 2d at 918 (citing Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995)). Damages are based on the value of the property at the time of the conversion. Cal. Civ. Code § 3336.

As stated above, Plaintiff had the exclusive commercial distribution rights to the Program, which Defendant intercepted and broadcast without a lawful sublicensing agreement. Based on the evidence presented, Defendant would have been required to pay $1,800 for a lawful sublicense. See Karimzadeh Aff. at 2-3 (establishing an approximate capacity of less than 100 persons); Gagliardi Aff. ¶ 8 & Ex. 2 (requiring a sublicense fee of $1,800 for a commercial establishment with a capacity of 1 to 100 persons).

Accordingly, the record before the Court supports entry of default judgment against Defendant for conversion and an award of damages in the amount of $1,800.

### 3. Section 17200

The Complaint also includes a claim for violation of California Business & Professions Code section 17200, et seq. Plaintiff does not move for default judgment on

---

[5] Although the Court considers the cost of a sublicense fee in calculating damages, the statutory damages award does not directly compensate Plaintiff for the value of the sublicense fee. In order to avoid duplicative recovery, the Court allows Plaintiff to recover the sublicense fee only in the form of conversion damages. See McCalpin, No. 16-02285 SBA (citing Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293, 2016 WL 524846 at *5 (E.D. Cal. Feb. 10, 2016)).

**1** this claim. Accordingly, the Court deems Plaintiff to have abandoned its claim under
**2** section 17200, and dismisses the same with prejudice.

### B. THE EITEL FACTORS

Having assessed the merits of Plaintiff's claims and damages, the Court finds that, on balance, the Eitel factors support the entry of default judgment. As discussed above, the material facts are not in dispute, and Plaintiff has sufficiently pled and proved the merits of its claims for violation of section 553 and conversion. Plaintiff requests damages of $28,800; however, the Court awards the lesser sum of $2,300, which is reasonable and proportionate to Defendant's demonstrated wrongdoing. Although the Court is cognizant of the general policy favoring a decision on the merits, Defendant's default makes this impractical, if not impossible. Further, there is no indication that Defendant's default was due to excusable neglect. Consequently, and given the prejudice Plaintiff would suffer if relief were denied, the Court finds that the entry of default judgment is warranted.

### C. ATTORNEY'S FEES AND COSTS

The Court in its discretion may award costs and reasonably attorney's fees to Plaintiff under 47 U.S.C. § 553(c)(2)(C). Any motion for attorney's fees and costs shall be due no later than 14 days after the entry of judgment. The Court notes that the filing of a motion for attorney fees and/or a bill of costs is governed by Federal Rule of Civil Procedure 54(d) and Civil Local Rule 54, and advises Plaintiff to observe the requirements of these provisions.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiff's claims for violation of 47 U.S.C. § 605 (Count I) and violation of California Business and Professions Code § 17200, et seq. (Count IV) are DISMISSED with prejudice.

2. Plaintiff's Application for Default Judgment (Dkt. 15) is GRANTED IN PART, and default judgment shall be entered against Defendant on Plaintiff's claims for violation of 47 U.S.C. § 533 (Count II) and conversion (Count III). The Court awards

Plaintiff $500 in statutory damages and $1,800 in conversion damages; thus, judgment shall be entered against Defendant in the sum of $2,300.

    3.    Plaintiff shall file any motion for attorney's fees and costs no later than 14 days after the entry of judgment.

    4.    The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 04/17/2018

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge